J-S01020-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN THE MATTER OF: M.P., A MINOR  :  IN THE SUPERIOR COURT OF
:      PENNSYLVANIA
:
APPEAL OF: B.P., FATHER      :
:
:
:
:
:
:  No. 1373 MDA 2018

Appeal from the Decree Entered July 20, 2018
In the Court of Common Pleas of Dauphin County Orphans' Court at
No(s):  43 AD 2018,
CP-22-DP-000295-2016

BEFORE:   PANELLA, P.J., MURRAY, J., and PELLEGRINI*, J.

MEMORANDUM BY MURRAY, J.:       **FILED FEBRUARY 19, 2019**

B.P. (Father) appeals from the decree involuntarily terminating his parental rights to his minor child, Ma.P. (born July 2011) (Child),[1] pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act.[2]  After careful review, we affirm.

Dauphin County Social Services for Children and Youth (the Agency) became involved with the family in November 2016, after receiving a report that Father and Mother were using drugs, and that Mother had delivered a

---

[1] Child has a younger half-sibling, M.P., born January 2013 to S.L. (Mother) and J.H.  Where appropriate, we refer collectively to M.P. and Ma.P. as Children.

[2] That same day, the court terminated the parental rights of Mother and J.H. Mother has appealed the termination of her parental rights, and that appeal is pending before this Court at 1371 MDA 2018.  J.H. has not appealed the termination of his parental rights.

---

*   Retired Senior Judge assigned to the Superior Court.

stillborn child and used drugs prior to delivery. *See* N.T., 7/19/18, at 8-13. While Mother was hospitalized, Children were removed from the home and placed in kinship foster care with a maternal aunt and uncle. *Id.* In December 2016, the Agency held a family group conference during which Mother admitted to using cocaine five days before the birth of the child. *Id.* at 9-10.

On January 18, 2017, Children were adjudicated dependent. Father attended the dispositional hearing. *Id.* at 26. Father's objectives included attending all court hearings, Agency meetings, and treatment team meetings; signing all releases of information; notifying the Agency of a new address within 24 hours; returning phone calls and text messages within 24 hours; attending, participating, and actively interacting with Child during visits; attending all medical appointments; developing effective parenting skills; obtaining a legal source of income; maintaining a stable residency; contacting the Agency within 24 hours if unable to attend visits; maintaining positive interactions with caregivers and regular contact with the Agency; submitting to random drug screens, obtaining a drug and alcohol evaluation, and remaining drug-free. *See* N.T. at 26-27, Ex. 8; *see also* Pet. for Termination of Parental Rights, 4/26/18, at ggg.

That same day, the Agency received a report that prior to the removal of Children from the home, Father had fed Children marijuana-laced cookies. *See* N.T. at 10. Mother was aware of Father's actions but did not stop him from giving Children the cookies. *Id.* Both parents were indicated as child abusers. *Id.*

Father attended a permanency review in February 2017. *Id.* at 26. However, he missed review hearings in April 2017, August 2017, and September 2017. *Id.* at 49. He also returned two urine screens, both of which were positive for tetrahydrocannabinol (THC), the active ingredient in marijuana, as well as cocaine. *Id.* at 27-28. In November 2017, an aggravated circumstances order was entered against Father due to his failure to maintain substantial and continuing contact with Child for a period of six months. *See* Order, 11/14/17, at 1.

In December 2017, both Father and Mother were charged with endangering the welfare of children and corruption of minors related to the incident with the marijuana cookies.[3] Mother entered a guilty plea to those offenses, but as of the time of the hearing, Father had not gone to trial. *See* N.T. at 48.

On April 26, 2018, the Agency petitioned for termination of Father's parental rights, asserting that Father had failed to complete and/or make sufficient progress toward the goals outlined in the family service plans and court orders. Specifically, the Agency petitioned for termination under Section 2511(a)(2), (5), (8), and (b). Also, the Agency sought to change Children's permanency goal from reunification to adoption.

---

[3] *See* 18 Pa.C.S.A. §§ 4304, 6301, respectively.

The court convened a hearing on the petitions on July 18, 2018. Children were represented by Sarah Hoffman, Esquire, as guardian *ad litem* and legal counsel.[4] Father, represented by counsel, testified on his own behalf.

The Agency caseworker, Rebecca Yost, testified that during the pendency of the case, Father returned only two urine screens, both of which were positive for illegal substances. ***See*** N.T. at 27-28. Additionally, Father failed to comply with any of the service objectives submitted by the Agency, and had not performed any parental duties for Child during that time. ***Id.*** at 26-27. Father had minimal to no involvement or visitation with Child. ***Id.*** at 30. In February 2018, Father confirmed his correct address in Harrisburg and his phone number with Ms. Yost, but did not return calls after she left him a message. ***Id.*** at 59-60. Ms. Yost testified that Child was very bonded with

_____

[4] We briefly address, *sua sponte*, the representation of counsel. ***See In re: K.J.H.***, 180 A.3d 411, 412-414 (Pa. Super. 2018). The Pennsylvania Supreme Court held that legal counsel must be appointed to represent a child's interests in a contested termination proceeding. ***In re Adoption of L.B.M.***, 161 A.3d 172, 183 (Pa. 2017) (plurality). However, a GAL may serve as counsel where there is no conflict between a child's legal and best interests. ***See In re T.S.***, 192 A.3d 1080, 1092-93 (Pa. 2018). At the time of the hearing, Children were approximately six and five years old. Attorney Hoffman, originally appointed as GAL, filed a motion seeking to be appointed as legal counsel and averring that there was no conflict between Children's best and legal interests. ***See*** Motion, 6/14/18, at 1-3. The orphans' court granted the motion and appointed Attorney Hoffman as legal counsel for Children. ***See*** Order, 6/15/18, at 1. Accordingly, the requirements of ***L.B.M.*** and ***T.S.*** were satisfied. ***See L.B.M.***, 161 A.3d at 183; ***T.S.***, 192 A.3d at 1092-93.

Child's foster parents, who provided for Child's needs and welfare, and that it was in Child's best interest for Father's rights to be terminated. *Id.* at 29-30.

Father testified that he lives in Harrisburg with his parents. *Id.* at 75-76. He is employed by a temp agency, his current job is in construction, and he works approximately forty hours a week. *Id.* at 77-78. Father's most recent job required him to commute back and forth between Harrisburg and North Carolina, and accordingly, he missed court dates. *Id.* Father averred he did not receive notice of the court dates. *Id.* at 79. Father also claimed that he stopped seeing Child due to conflicts between Mother and Child's foster family, and he did not want to be involved. *Id.* Additionally, Father claimed that because he did not have time to go to the Agency's offices for urine screens, he had obtained a sample from someone else. *Id.* at 80.

At the conclusion of testimony, the orphans' court terminated Father's parental rights pursuant to Section 2511(a)(1), (2), (5), (8), and (b), and changed Child's permanency goal to adoption. *Id.* at 96-102. Father timely appealed and filed a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[5]

_____

[5] On September 12, 2018, this Court issued a rule to show cause why the appeal should not be quashed, as the notice of appeal contained multiple docket numbers from the court of common pleas. *See* Order, 9/12/18, at 1 (citing Pa.R.A.P. 341(a) and *Commonwealth v. Walker*, 185 A.3d 969 (2018) (filed June 1, 2018, and noting that in future cases, where a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed, or the appeal will be quashed)). On

On appeal, Father presents two issues:

1. Whether the trial court abused its discretion and erred as a matter of law in terminating the parental rights of [Father] as to [Child]?

2. Whether the trial court abused its discretion in concluding that the best interests of [Child] would be served by terminating the parental rights of [Father]?

Father's Brief at 4 (unnecessary capitalization and suggested answers omitted).

We review cases involving the termination of parental rights according to the following standards:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously

_____

September 17, 2018, Father filed a response to the rule, explaining that although the termination decree listed both the termination and dependency dockets in its caption, he was challenging only the decree terminating his parental rights, and not the permanency goal change order. On October 10, 2018, this Court discharged the rule to show cause and referred the issue to the merits panel. *See* Order, 10/10/18, at 1.

Following our review of the record and briefs, we note that, in his statement of errors complained of on appeal, Father challenged both the goal change and the termination. Per his response to the rule, Father does not challenge the goal change order on the dependency docket. A review of Father's brief reveals that, although he purports to challenge the goal change to adoption, the argument in the section is really a challenge to the orphans' court's Section 2511(b) findings. Accordingly, we need not quash the instant appeal pursuant to *Walker*.

emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (internal citations and quotations omitted).

> Termination requires a bifurcated analysis:
>
> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). As the trial court in this case focused its analysis on the termination of Father's parental rights under 23 Pa.C.S.A. § 2511(a)(8), we focus our own analysis accordingly.

The relevant subsections of 23 Pa.C.S.A. § 2511 provide:

> **(a)** **General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

- 7 -

\*\*\*

**(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

As noted, Section 2511(a)(8) sets a twelve-month time frame for a parent to remedy the conditions leading to the child's removal. *See In re A.R.*, 837 A.2d 560, 564 (Pa. Super. 2003). Here, Child was out of Father's care for over twelve months. At the time of the termination hearing, Child had been in care for nineteen months and twenty days. Thus, "the court must next determine whether the conditions that led to the [Child's] removal continue to exist. If a parent fails to cooperate or appears incapable of benefiting from the reasonable efforts supplied over a realistic period of time, [CYS] has fulfilled its mandate and upon proof of satisfaction of the reasonable good faith effort, the termination petition may be granted." *Id.* at 564 (citing *In Interest of Lilley*, 719 A.2d 327, 332 (Pa. Super. 1998)).

Father argues that although he stopped seeing Child, it was not because "he did not want to be involved." Father's Brief at 11. Rather, Father asserts that he ceased visitation and involvement with Child because of the conflict

- 8 -

with Mother and Child's foster parents. *Id.* Further, Father counters that at the outset of the case, he attended some court hearings, and submitted two urine screens. *Id.* at 10.

The orphans' court concluded that clear and convincing evidence established grounds for termination under 23 Pa.C.S.A. § 2511(a)(8). *See* Trial Court Opinion, 10/3/18, at 11. The court observed that "Father has been unwilling or unable to provide essential parental care to [Child] since November 2016)." *Id.* The record supports this determination. Child was originally placed in foster care in November 2016, as a result of both parents' drug use, and Father's actions of feeding Child marijuana-laced cookies. While Father initially attended the shelter care and dependency adjudication proceedings in January 2017, and one permanency review hearing, Father was otherwise noncompliant with all objectives. Father did not contact or visit with Child during the time Child was in care. Father did not remain in regular contact with the Agency, and did not return calls or request visitation. Although one of Father's objectives was to remain drug-free and provide regular urine screens, Father provided only two urine screens at the outset of the case, and both were positive. Finally, in November 2017, an aggravated circumstances order was entered against Father based upon his lack of contact with Child. Father did not appeal that order.

Section 2511(a)(8) does not inquire into the reasons a parent has been unwilling or unable to provide essential parental care – only that the conditions still exist. *A.R.*, 837 A.2d at 564. Additionally, in this case, while reasonable

- 9 -

efforts were made by the Agency, Father's unwillingness to cooperate, and unwillingness to remain in contact with Child, necessitated the entry of an aggravated circumstances order.

Accordingly, we discern no error in the orphans' court's finding that competent, clear, and convincing evidence supported the termination of Father's parental rights pursuant to Section 2511(a)(8), based upon the fact that Child had been removed from Father's care for over twelve months, and the conditions which led to the removal or placement of Child continued to exist. *A.R.*, 837 A.2d at 564.

Next, we must consider whether Child's needs and welfare will be met by termination pursuant to Subsection (b). *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *Id.* The court is not required to use expert testimony, and social workers and caseworkers may offer evaluations as well. *Id.* Ultimately, the concern is the needs and welfare of a child. *Id.*

We have stated:

[b]efore granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the intangible dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of the relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve the child[ren]'s needs and

- 10 -

welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

*Z.P.*, 994 A.2d at 1121 (quoting *In re C.S.*, 761 A.2d 1197, 1202 (Pa. Super. 2000)). The trial court may equally emphasize the safety needs of the child and may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. *See In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011). Where there is no evidence of a bond between the parent and child, it is reasonable to infer that no bond exists. *Id.* "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

Father asserts that termination was not in Child's best interests. *See* Father's Brief at 12-13. Father blames foster parents for his lack of involvement with Child, and argues that he ceased contact with Child to avoid further conflict, and because his work required him to travel to North Carolina. *Id.* at 13. This argument is both self-serving and unavailing.

No evidence of record was introduced to show that any parental bond existed between Child and Father. *See*, *e.g.*, *K.Z.S.*, 946 A.2d at 763. Regarding Section 2511(b), the orphans' court observed:

> . . . Father professes to love [Child]. However, for an unreasonable period of time, he has been absent from [Child's] life and has failed to perform the essential duties of parenting.

> The record is devoid of a bond with Father which, if broken, would cause detriment to [Child].
>
> Children have resided with the kinship foster family since November 2016. In that home they have received the love, care, and attention needed to address all of their needs. Their bond with the foster parents is evidenced by their happiness and affection toward the foster parents. Significantly, Foster Mother took a leave of absence from her employment to ensure she could stay with M.P. during her hospitalization. Foster Mother has returned to work, but takes time off as needed . . . . The kinship foster parents have provided all of the devotion and stability Children require and deserve.

Orphans' Court Opinion, 10/3/18, at 12-13 (citations to the record omitted). We discern no abuse of discretion in the court's conclusion.

In sum, clear and convincing evidence supports the orphans' court's termination of Father's parental rights under Section 2511(a)(8), as well as the Section 2511(b) findings that there was no bond between Father and Child, and that adoption would best serve Child's needs and welfare. *See Z.P.*, 994 A.2d at 1126-27; *K.Z.S.*, 946 A.2d at 763. Accordingly, we affirm the decree terminating Father's parental rights.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/19/2019